IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| GARY W. LEWIS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 05-1632 |
| ) | |
| VOLLMER OF AMERICA, ) | Judge Conti |
| VOLLMER WERKE, RALF KRAEMER, ) | Magistrate Judge Hay |
| TOM RITTER, GABRIEL SCHEDL, ) | |
| DAN ZOLLER, SIEGFRIED KNUPFER, ) | |
| MARTIN KAISER, J. (HANS) KOELBL, ) | |
| ) | |
| Defendants. ) | |

MEMORANDUM ORDER

Plaintiff, Gary W. Lewis, filed a complaint in the above-captioned matter on November 25, 2005, bringing claims of employment discrimination under Title VII of the Civil Rights Act of 1991, 42 U.S.C. §§ 2000(e), *et seq.*, the Age Discrimination in Employment Act, 29 U.S.C. §§ 621, *et seq.*, and the Pennsylvania Human Relations Act, 43 P.S. §§ 951, *et seq.* Service was perfected as to defendants Vollmer of America, Ralph Kraemer, Tom Ritter, Gabriele Schedl, and Daniel Zoller on November 29, 2005, and an Answer was filed on their behalf on December 20, 2005. On March 22, 2006, plaintiff filed a motion seeking an additional 90 days within which to serve the remaining defendants, Vollmer Werke, the parent company of Vollmer of America, Siegfried Knupfer, Martin Kaiser and J. ("Hans") Koelbl (collectively, "the German defendants"). The motion was granted on March 24, 2006, giving plaintiff until June 24, 2006, to perfect service. Having failed to perfect service by that date, the Court issued an order on July 27, 2006, directing plaintiff to show cause why the case against the German defendants should not be dismissed for failure to make timely service. Plaintiff responded on August 31, 2006, arguing that Vollmer of America is an agent and alter ego of Vollmer Werke and, thus, that service was properly effectuated as to Vollmer Werke at Vollmer of America on May 8, 2006. See Dkt. Nos. 19, 23. Vollmer of America has, with leave of court, responded to

plaintiff's response arguing that it is not the agent or alter ego of Vollmer Werke and that it is, therefore, not required to accept service on its behalf or on behalf of the individual German defendants.

It appears undisputed that a plaintiff may not properly serve a parent company at its subsidiary where they have separate corporate identities. Akzona Inc. v. E.I. DuPont Nemours & Co., 607 F. Supp. 227, 237 (D. Del. 1984). Thus, in order for service on a parent company at its subsidiary to be deemed proper a plaintiff must present evidence that the two entities are "'so interrelated and integrated in their activities, labor relations, and management'" that they should be regarded as a single employer. Wimberly v. Severn Trent Services, Inc., 2006 WL 2468641 *11 (E.D. Pa. August 22, 2006), quoting Marzano v. Computer Science Corp., 91 F.3d 497, 513 (3d Cir. 1996).

The Court of Appeals for the Third Circuit has recently found that a company and its affiliates will be considered a single employer for purposes of Title VII when (1) a company has split itself into separate entities for the purpose of evading Title VII or (2) a parent company directed a subsidiary's discriminatory acts. Nesbit v. Gears Unlimited, Inc., 347 F.3d 72, 85-6 (3d Cir. 2003), cert. denied, 541 U.S. 959 (2004). The Court further held that where neither of these situations is present, Courts should engage in an "intentionally open-ended equitable inquiry ... to determine when substantively to consolidate two entities," directing that the focus should be on "operational entanglement -- whether operations of the companies are so united that nominal employees of one company are treated interchangeably with those of another." Id. at 87. Noting that substantive consolidation is an equitable remedy that is "difficult to achieve," the Court held that factors relevant to the operational entanglement inquiry include: (1) the degree of ownership between the entities with respect to ownership, management (both directors and officers), and business functions (e.g., hiring and personnel matters), (2) whether they present themselves as a single company such that third parties dealt with them as one unit, (3) whether a

parent company covers the salaries, expenses, or losses of its subsidiary, and (4) whether one entity does business exclusively with the other.  Id.[1]

Because plaintiff has not argued or presented evidence that Vollmer Werke split itself into separate entities for the purpose of evading Title VII or that Vollmer Werke directed Vollmer of America's allegedly discriminatory acts, the question of whether or not Vollmer Werke and Vollmer of America are single employers appears to turn on the degree of their operational entanglement.  Considering the factors set forth above, the Court is unable to conclude that the two companies are so entangled that they are properly consider a single entity for purposes of Title VII.

Indeed, the evidence of record shows that with the exception of one individual, Vollmer of America has its own officers and directors and maintains its own payroll system and separate records, and conducts and funds its own trade shows.[2]  Although plaintiff has submitted a declaration -- his own -- in which he states that Vollmer of America is a wholly owned subsidiary of Vollmer Werke and that Vollmer Werke manages Vollmer of America's recruiting,

---

[1] We note here that the issue in Nesbit was whether the two companies at issue should be consolidated and, thus, considered a single entity for Title VII purposes where the plaintiff's immediate employer did not employ the minimum 15 employees required under the statute.  Because it appears undisputed in this case that Vollmer of America employs the requisite number of employees under the statute, it is not entirely clear that Nesbit or the factors devised by the Court to resolve the issue before it are relevant here.  Nevertheless, before Nesbit was decided, Courts in the Third Circuit typically applied the "integrated enterprise" test to determine whether single employer treatment was appropriate in Title VII actions.  See Degiovanni Sharp v. Whitman Council, Inc., 2006 WL 2261623 *5 n.3 (E.D. Pa. August 3, 2006).  Under the "integrated enterprise" test, the Court is to consider: 1) the interrelation of operations; 2) common management, directors, and boards; 3) centralized control of labor relations; and 4) common ownership and financial control.  Id.  See Nesbit, 347 F.3d at 84.  Thus, although the Third Circuit declined to apply these precise factors in Nesbit, the operational entanglement test it ultimately devised does not appear to differ significantly from the integrated enterprise test previously employed.

[2] Def. Exh. A: Kraemer Aff. ¶¶ 11-13, 22, 26.

3

hiring, firing, salary negotiations, insurance, financial and legal matters, pricing of equipment and the organization of its personnel and management, the President of Vollmer of America, Ralph Kraemer, has submitted an affidavit attesting to the fact that he, as President, is responsible for all of its day to day operations, including directing the work of all its employees and the maintenance of all records and that he has full authority to make all decisions for Vollmer of America regarding hiring, firing and employee salaries and benefits.[3]  Moreover, it is clear that common ownership and coordination in recruiting and hiring are insufficient to disregard the separate corporate forms.  Nesbit, 347 F.3d at 88-89.  See Frank Sexton Enters. Inc. v. Societe de Diffusion Internationale Agro-Alimentaire (Sodiaal), 1999 WL 636668 *3 (E.D. Pa. August 20, 1999) ("Overlapping board of directors and common officers, although relevant to the inquiry, are not enough to render one entity the alter ego of the other.")

       Further, while Vollmer of America and Vollmer Werke may share the same logo and Vollmer Werke may refer to its subsidiaries on its website as "existing branches," and as being "integral to our strategy of reinforcing the quality of our core competence and guarantee maximum proximity to customers," there is no evidence that third parties deal with Vollmer Werke and Vollmer of America as one unit.[4]  In addition, plaintiff has not pointed to any evidence which would suggest that Vollmer Werke covers the salaries, expenses or losses of Vollmer of America.  To the contrary, Mr. Kraemer has stated in his affidavit that Vollmer of America is a separate and solvent corporation, that has its own payroll system and funds its own trade shows.[5]

---

[3] Pl. Exh. A: Lewis Decl. ¶¶ 6-16; Def. Exh. A: Kraemer Aff. ¶¶ 2-4, 24, 25.

[4] See Pl. Exh. C: Excerpts from Vollmer Werke's website, pp. 1, 3, 4, 6.

[5] Def. Exh. A: Kraemer Aff. ¶¶ 9, 12, 22, 26.

Finally, it does not appear that either company does business exclusively with the other. Although plaintiff has declared that Vollmer Werke manufactures the Vollmer machine line that is sold exclusively by Vollmer of America and that Vollmer of America sells and services only Vollmer Werke equipment,[6] Mr. Kraemer has stated in his affidavit that in addition to Vollmer Werke products Vollmer of America "sells Winter grinding wheels, ASI grinding wheels and infiltration systems," as well as Loroch machines and Zoller measuring machines.[7] Thus, while it cannot be disputed that Vollmer of America and Vollmer Werke enjoy a certain relationship it does not appear that either deals exclusively with the other or that they have such significant operational entanglement to be considered one entity. As such, service on Vollmer Werke at Vollmer of America is not proper and Vollmer Werke has yet to be served. See Nesbit, 347 F.3d at 89 (Finding the mere fact that the two entities coordinated recruiting and hiring did not render them a single company where they did not hold themselves out to be a single company, did not do business exclusively with each other and had separate human resources, payrolls and finances); Cheskawich v. Three Rivers Mortgage Co., 2006 WL 2529591 *5 (W.D. Pa. August 31, 2006) (Declining to find the requisite connection where the two companies maintained separate payroll systems and paid its employees from separate accounts and where there was no evidence that they held themselves out as a single entity or that one did business exclusively with the other.)

Plaintiff has nevertheless asked for additional time within which to make service on Vollmer Werke and the individual German defendants. The Court notes at the outset that although the 120 day time limit for making service under Fed. R. Civ. P. 4(m) does not apply to the German defendants, see Pennsylvania Orthopedic Association v. Mercedes-Benz A.G., 160

---

[6]Pl. Exh. A: Lewis Decl. ¶¶ 4, 5.

[7]Def. Exh. A: Kraemer Aff. ¶¶ 14-16.

F.R.D. 58, 61 (E.D. Pa. 1995); In re Imperial Home Decor Group, Inc., 294 B.R. 607, 609 (Bankr. D. Del. 2003), the time frame within which to make service is not limitless and plaintiff has already had almost eleven months to serve these defendants which appears more than sufficient. See In re Crysen/Montenay Energy Co.,166 B.R. 546, 553 (S.D.N.Y. 1994).[8] This having been said, plaintiff has arguably been diligent in his attempts to make service during that time, albeit largely through Vollmer of America on the mistaken belief that Vollmer of America is the agent of Vollmer Werke, and has represented that he has since engaged the services of an international process server. See Papst Licensing GmbH and Co. KG v. Sunonwealtlh Elec. Mach. Ind. Co., 332 F. Supp. 2d 1142, 1151 (N.D. Ill. 2004), quoting Standard Commercial Tobacco Co. v. Mediterranean Shipping Co., 1995 WL 753901 *1 (S.D.N.Y. Dec. 19, 1995) ("[W]here service is in a foreign country, the Court uses a flexible due diligence standard to determine whether service of process was timely."); In re Bulk (Extruded) Graphite Products Antitrust Litigation, 2006 WL 1084093 *3 (D.N.J. April 24, 2006) (same). See also Thayer v. Dial Industrial Sales, Inc., 85 F. Supp. 2d 263, 266 n.1 (S.D.N.Y. 2000) (Finding that even though the 120-day limit for service of process was inapplicable, foreign defendant who had not been served after six months was properly dismissed from suit where plaintiff had made no attempt to make service.) Although it is unclear when plaintiff engaged such services, he has stated that he underestimated the time and effort it would take to effectuate service pursuant to the Hague Convention and asks for an additional four months to complete the process. Although Vollmer of America has objected to any additional time being granted, concluding that any

---

[8]As well, the Court reiterates here that plaintiff requested and was granted an additional ninety days within which to make proper service in March of this year. Whether or not plaintiff was required to seek additional time from the Court, inasmuch as the 120 day time frame for service is inapplicable, he was nevertheless bound at that point by the Courts' order to perfect service by June 24, 2006. Plaintiff not only failed to meet that deadline but did not seek a further extension until August 31st and only then at the Court's prompting.

further delay will cause it undue prejudice, it has not indicated precisely how it will be prejudiced. Nor is any particular prejudice it might suffer, other than general delay, obvious from the record.

Accordingly, IT IS HEREBY ORDERED that plaintiff has until December 31, 2006,[9] to serve Vollmer Werke and the individual German defendants.

IT IS FURTHER ORDERED that no additional time to effectuate service will be granted and that plaintiff's failure to serve the German defendants by December 31, 2006, will result in the complaint being dismissed as to them.

/s/   Amy Reynolds Hay
AMY REYNOLDS HAY
United States Magistrate Judge

cc:   All counsel of record via Electronic Filing

---

[9]Plaintiff's request for four additional months to perfect service was made on August 31, 2006, rendering December 31, 2006, the operative date. See Dkt. No. 23.